**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| DANE DANIEL, JAMES GURTNER, and DEANNA NEASON, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>JAKE LOUIS FRUGE, IAN JAMES PRUKNER, BRAD ROMERO, MELTON WEAVER, AND PFS INVESTMENTS, INC.,<br><br>*Defendants.* | Case No.: 4:25-cv-04857<br><br>Hon. Keith P. Ellison |

**<u>DEFENDANT PFS INVESTMENTS INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2),
12(b)(6) AND 12(b)(3)</u>**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED..........................................................................3

FACTUAL BACKGROUND...................................................................................................3

SUMMARY OF ARGUMENTS..............................................................................................5

LEGAL STANDARDS...........................................................................................................6

ARGUMENT.......................................................................................................................7

    I.      The Court Lacks Personal Jurisdiction Over PFSI ...............................................7

          A.     PFSI is Not Subject to General Jurisdiction...............................................8

          B.     PFSI is Not Subject to Specific Jurisdiction ..............................................8

    II.     The Complaint Fails to State a Claim Against PFSI...........................................10

          A.     Plaintiffs Fail to State a Control Person Claim under Texas Gov't Code Ann. § 4008.055(a) (Counts II and V)............................................10

          B.     Plaintiffs Fail to State an Aiding and Abetting Claim under Texas Gov't Code Ann. § 4008.055(c) (Counts III and VI) ..............................12

          C.     Plaintiffs Fail to State a Claim for Negligence (Count VII)......................15

          D.     Plaintiffs Fail to State a Claim for Fraud (Count VIII)............................18

    III.    Plaintiff Daniel's Claims Must Be Dismissed in Favor of Arbitration ................18

          A.     Daniel is Party to a Valid and Enforceable Arbitration Agreement..........19

          B.     Daniel's Agreement Contains a Valid Delegation Clause, Limiting the Court's Analysis. ..........................................................................21

CONCLUSION..................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Abell v. Potomac Ins. Co.*,
858 F.2d 1104 (5th Cir. 1988)...............................................................................13

*In re Amaranth Nat. Gas Commodities Litig.*,
730 F.3d 170 (2d Cir. 2013)..................................................................................14

*Bagby v. Rydex Invs.*,
2007 WL 507042 (N.D. Tex. Feb. 16, 2007) .......................................................13

*Baker Hughes Inc. v. Homa*,
2013 WL 5775636 (S.D. Tex. Oct. 25, 2013) .........................................................9

*Barnes v. SWS Fin. Servs., Inc.*,
97 S.W.3d 759 (Tex. Ct. App. 2003)............................................................... 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................6

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
582 U.S. 255 (2017) ........................................................................................ 7, 8, 9

*CD Partners, LLC v. Grizzle*,
424 F.3d 795 (8th Cir. 2005)................................................................................20

*Christiana Tr. v. Riddle*,
911 F.3d 799 (5th Cir. 2018)................................................................................12

*CMA CGM, S.A. v. GCC Supply & Trading LLC*,
793 F. Supp. 3d 866 (S.D. Tex. 2025)..................................................................18

*Cook v. Russell in & for Cnty. of Maricopa*,
258 Ariz. 265 (Ct. App. 2024) ...........................................................................20

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014)................................................................................22

*Crescendo Invs., Inc. v. Brice*,
61 S.W.3d 465 (Tex. App. 2001) .........................................................................14

*Curry v. Pickett*,
2010 WL 3353952 (Tex. Ct. App. Aug. 26, 2010)................................................16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .............................................................................................2, 8

*In re Deepwater Horizon*,
745 F.3d 157 (5th Cir. 2014)................................................................................16

*Del Castillo v. PMI Holdings N. Am. Inc.*,
2016 WL 3745953 (S.D. Tex. July 13, 2016) .......................................................15

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008)........................................................................ 13, 14

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    235 F. Supp. 2d 549 (S.D. Tex. 2002) ...............................................................10

*Fink v. Anderson*,
    477 S.W.3d 460 (Tex. App. 2015) ......................................................................12

*Flory v. Silvercrest Indus., Inc.*,
    129 Ariz. 574 (1981) .........................................................................................20

*Fox v. Lifemark Sec. Corp.*,
    84 F. Supp. 3d 239 (W.D.N.Y. 2015)................................................................16

*Fryar v. Abell*,
    492 U.S. 914 (1989) ..........................................................................................13

*Gezu v. Charter Communications*,
    17 F.4th 547 (5th Cir. 2021)..............................................................................18

*Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*,
    2016 WL 5844707 (S.D. Tex. Oct. 6, 2016) ....................................................18

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
    921 F.3d 522 (5th Cir. 2019).............................................................................19

*Hampton v. Equity Tr. Co.*,
    607 S.W.3d 1 (Tex. Ct. App. 2020) ..................................................................18

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010)..............................................................................................17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ............................................................................................19

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ............................................................................................18

*ITL Int'l, Inc. v. Constenla, S.A.*,
    669 F.3d 493 (5th Cir. 2012)............................................................................9, 10

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008)...............................................................................7

*Kroger Co. v. Elwood*,
    197 S.W.3d 793 (Tex. 2006)..............................................................................15

*Kubala v. Supreme Prod. Servs., Inc.*,
    830 F.3d 199 (5th Cir. 2016)............................................................................ 7, 19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..........................................................................................17

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

*Luv N' care Ltd. v. Insta-Mix, Inc.*,
  438 F.3d 465 (5th Cir. 2006)...................................................................................8, 9

*McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*,
  923 F.3d 427 (5th Cir. 2019)........................................................................................7

*Meek v. Howard, Weil, Labouisse, Friedrichs, Inc.*,
  1996 WL 405436 (5th Cir. 1996)................................................................................11

*Meyer v. Holley*,
  537 U.S. 280 (2003) ...................................................................................................12

*In re Neighbors Legacy Holdings, Inc.*,
  645 B.R. 864 (Bankr. S.D. Tex. 2022) .......................................................................10

*New Texas Auto Auction Servs., L.P. v. Gomez De Hernandez*,
  249 S.W.3d 400 (Tex. 2008)........................................................................................15

*In re Oil Spill by the Oil Rig Deepwater Horizon*,
  835 F. Supp. 2d 175 (E.D. La. 2011)..........................................................................16

*Overstreet v. Contigroup Companies, Inc.*,
  462 F.3d 409 (5th Cir. 2006).......................................................................................19

*In re Petco Animal Supplies Inc. Sec. Litig.*,
  2006 WL 6829623 (S.D. Cal. Aug. 1, 2006)........................................................ 10, 11

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
  687 F.3d 671 (5th Cir. 2012).......................................................................................21

*Polyflow, LLC v. Specialty RTP, LLC*,
  993 F.3d 295 (5th Cir. 2021).......................................................................................19

*Porter v. Shearson Lehman Bros. Inc.*,
  802 F. Supp. 41 (S.D. Tex. 1992)................................................................................16

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021).....................................................................................15

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011).........................................................................................7

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) .....................................................................................................18

*Reyna v. Int'l Bank of Com.*,
  839 F.3d 373 (5th Cir. 2016).......................................................................................19

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018)...........................................................................................6

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020).............................................................................. 20, 21

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

*Solis v. S.V.Z.*,
    566 S.W.3d 82 (Tex. Ct. App. 2018)................................................................................18

*State Farm Bank, F.S.B. v. Manheim Auto. Fin. Servs., Inc.*,
    2010 WL 3156008 (N.D. Tex. Aug. 6, 2010) ...................................................................16

*Sterling Tr. Co. v. Adderley*,
    168 S.W.3d 835 (Tex. 2005)..............................................................................................13

*Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*,
    231 Ariz. 287 (Ct. App. 2012) ..........................................................................................20

*Sw. Key Program, Inc. v. Gil-Perez*,
    81 S.W.3d 269 (Tex. 2002)......................................................................................... 16, 17

*Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*,
    772 F. App'x 585 (9th Cir. 2019)......................................................................................21

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020)................................................................................16

*In re VeriFone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993)...............................................................................................16

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................................................9

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .............................................................................................................9

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 et seq. ............................................................................18

Tex. Gov't Code Ann. § 4008.055..................................................................................... 10, 12

Texas Securities Act.............................................................................. 2, 5, 6, 10, 12, 13, 14

**Rules**

Fed. R. Civ. Pro. Rule 9(b)..................................................................................................7, 13

Fed. R. Civ. Pro. Rule 12(b)(2)...............................................................................................3, 6

Fed. R. Civ. Pro. Rule 12(b)(3)..............................................................................................7, 22

Fed. R. Civ. Pro. Rule 12(b)(6)...............................................................................................3, 6

**Treatises**

Restatement (Third) of Agency § 1.01 (A.L.I. 2006)...............................................................12

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## Regulations

FINRA Rule 3270.................................................................................................................4, 11

FINRA Rule 3280.......................................................................................................................15

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**INTRODUCTION**

PFS Investments Inc. ("PFSI") should not be in this case.  Plaintiffs claim they suffered losses from contracts they entered into with a company called Champion – but PFSI had nothing to do with Champion, or the Plaintiffs.  The only even tangential connection is that some of the individuals who formed Champion were once affiliated with PFSI as registered representatives.  But *none* of them were affiliated with PFSI when Plaintiffs contracted with Champion.  Plaintiffs do not allege that PFSI played any role in their transactions with Champion – or even that any of them ever had *any* relationship with PFSI.  The Court should dismiss PFSI from this action.

PFSI is a broker-dealer subject to regulation by the Financial Industry Regulatory Authority ("FINRA").  Defendants Ian Prukner, Jake Fruge and Melton Weaver (the "Former PFSI Representatives") were independent sales representatives that were formerly associated with PFSI.  As securities licensed representatives, the Former PFSI Representatives were required by FINRA and PFSI to disclose and receive approval for any Outside Business Activities ("OBAs").  The Former PFSI Representatives orally submitted Champion as an OBA to PFSI in April 2021.  The Former PFSI Representatives described the business as assisting customers with establishing e-commerce storefronts that offered products for sale on established e-commerce platforms.  PFSI issued an OBA approval based on the description of the business by the Former PFSI Representatives and their acknowledgment of various terms and conditions.  Only two months later, however, PFSI suspended the approval of the marketing of the OBA after the Former PFSI Representatives failed to comply with PFSI's requests for additional information related to the OBA.  It was after this suspension was in effect, in a subsequent conversation with one of the Former PFSI Representatives, that PFSI learned of a second product (digital real estate) being marketed by them under the Champion name.  PFSI never approved this digital real estate OBA

1

and instead informed them they could no longer remain associated with PFSI unless they terminated all activity related to the OBA.

Plaintiffs now argue that PFSI did not insist on compliance with a FINRA rule requiring written disclosure of OBAs, and further claim that, after approving the OBA, PFSI did not supervise the sale of Champion products. Based on this series of (entirely illogical and strongly disputed) premises, Plaintiffs seek to hold PFSI liable for their alleged losses suffered in connection with the transactions they entered into with Champion. They do so even though each Plaintiff's transactions with Champion occurred long after the Former PFSI Representatives ended any association with PFSI, and even though the Plaintiffs had no relationship with PFSI. For numerous reasons, the Court should dismiss Plaintiffs' claims.

To begin, the Court lacks jurisdiction over PFSI. PFSI is a Georgia corporation. That means there is no general jurisdiction over PFSI because it is "at home" in Georgia, not Texas. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Court also lacks specific jurisdiction over PFSI because, unsurprisingly, Plaintiffs identify no conduct by PFSI that was purposefully directed toward this forum and that forms the basis of their claims.

Plaintiffs' claims fail on the merits as well. Plaintiffs assert six claims against PFSI under the Texas Securities Act and common law, but they all boil down to the theory that PFSI should be held liable for the acts of the Former PFSI Representatives when they ran Champion, solely because the Former PFSI Representatives were once affiliated with PFSI. That makes no sense because the Former PFSI Representatives were no longer affiliated with PFSI when Plaintiffs entered their transactions with Champion. Plaintiffs also claim PFSI violated FINRA rules, but there is no private right of action to enforce those rules and, regardless, they create no duty to members of the public like Plaintiffs.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Finally, the Court should compel Plaintiff Dane Daniel to arbitrate his claims against PFSI. Daniel entered into a valid arbitration agreement that delegates questions of arbitrability to the arbitrator. Accordingly, his claims must be dismissed in favor of arbitration.

## STATEMENT OF ISSUES TO BE DECIDED

**I.** Whether the claims against PFSI should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

**II.** Whether the claims against PFSI should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

**III.** Whether Plaintiff Dane Daniel's claims against PFSI should be dismissed in favor of arbitration.

## FACTUAL BACKGROUND

PFSI is a broker-dealer and investment adviser that is both headquartered and incorporated in Georgia. ¶ 32.[1] The Former PFSI Representatives were affiliated with PFSI for a period of time but were no longer affiliated with PFSI when they allegedly entered into the transactions with Plaintiffs at issue in this litigation. *Compare* ¶¶ 24–26 (earliest transaction June 2023), *with* ¶ 99 ("registration with PFS terminated in August 2022" and "March 2023").

In March 2021, the Former PFSI Representatives, together with Defendant Brad Romero, formed Champion E-Com ("Champion"). ¶¶ 5, 34.[2] Champion sold two types of products: (1) "E-Commerce Stores," which were online storefronts managed by Champion, ¶ 61; and (2) Digital Real Estate," which were websites that generated leads for third party businesses, ¶ 51.

---

[1] References to the Complaint (Dkt. 1) are cited as "¶ _".

[2] The Complaint includes two paragraphs numbered 34. The reference here is to the second paragraph labeled 34 on page 9.

Champion was unrelated to PFSI.  *See* Ex. A[3] at 2 (Champion was "a company independent of PFSI").  The Former PFSI Representatives were required to disclose their work on Champion to PFSI under FINRA Rule 3270, which requires registered representatives (here, the Former PFSI Representatives) to report in writing to their member firm (here, PFSI) work performed on any OBA.  Following the Former PFSI Representatives' oral disclosure, PFSI approved Champion as an OBA in August 2021.  ¶¶ 73–74, 77.  In the fall of 2021, PFSI requested further information from the Former PFSI Representatives regarding Champion.  Ex. A at 3.  When the Former PFSI Representatives failed to cooperate, PFSI prohibited the Former PFSI Representatives from further marketing Champion in October 2021.  *Id.*

In April 2022, PFSI told the Former PFSI Representatives that they could not remain registered with PFSI unless they terminated their involvement with Champion.  ¶ 97.  PFSI and the Former PFSI Representatives parted ways soon thereafter: "Fruge and Prukner's registration with PFS[I] terminated in August 2022" and Weaver's "terminated in March 2023."  ¶ 99.

Plaintiffs' transactions with Champion *all* occurred after that.  Plaintiff Dane Daniel's transactions occurred in November and December 2023; James Gurtner's transactions occurred in June 2023; and Deanna Neason's transactions occurred in June and July 2023.  ¶¶ 24–26.

On July 12, 2024, PFSI entered into a settlement with FINRA regarding Champion.  *See* Ex. A.  FINRA alleged that PFSI violated FINRA rules by failing to require the Former PFSI Representatives to submit written notice of their Champion OBA.  *See id.* at 2.  FINRA imposed a fine of $60,000, noting that the Former PFSI Representatives orally disclosed all the information that should have been disclosed in writing under Rule 3270, and that PFSI in any event prohibited the Former PFSI Representatives from marketing Champion in October 2021 – just two months

---

[3] Citations to "Ex. __" refer to the exhibits of the Declaration of Brian M. Lutz, filed concurrently herewith.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

after it had approved the OBA. *Id.* at 4–5. PFSI neither admitted nor denied FINRA's allegations. *Id.* at 2.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed their Complaint on October 10, 2025. Plaintiffs allege that Champion's E-Commerce Stores and Digital Real Estate were securities that should have been (but were not) registered as such, and that the Former PFSI Representatives and Romero solicited Plaintiffs to invest in the alleged unregistered securities through misleading statements, in violation of the Texas Securities Act. ¶¶ 166, 184. Even though none of the Plaintiffs purchased these alleged securities while the Former PFSI Representatives were affiliated with PFSI, and none of the Plaintiffs had any relationship with PFSI, Plaintiffs claim PFSI should be held liable because it allegedly controlled the Former PFSI Representatives and therefore materially aided in the sale of the unregistered securities. Plaintiffs also assert claims against PFSI for negligence and fraud.

## SUMMARY OF ARGUMENTS

**I.** Plaintiffs' claims against PFSI should be dismissed for lack of personal jurisdiction. This Court lacks general jurisdiction over PFSI because it is a Georgia corporation that is not "at home" in Texas. The Court also lacks specific jurisdiction over PFSI because Plaintiffs fail to allege that their claims against PFSI arise out of or relate to any conduct by PFSI that was purposefully directed at Texas.

**II.** Plaintiffs' Texas Securities Act ("TSA") control person claims (Counts II and V) should be dismissed for failure to state a claim because Plaintiffs do not adequately plead that a primary violation of the securities laws occurred or that PFSI controlled the Former PFSI Representatives at the time of the alleged violations—which occurred after the Former PFSI Representatives were no longer affiliated with PFSI.

5

**III.**    Plaintiffs' TSA aiding and abetting claims (Counts III and VI) should be dismissed for failure to state a claim because Plaintiffs do not adequately plead that (i) a primary violation of the securities laws occurred; (ii) PFSI knew about any such primary violation; (iii) PFSI rendered substantial assistance in any violation; or (iv) PFSI intended to deceive Plaintiffs—individuals that the Complaint never alleges PFSI ever met or even knew about.

**IV.**    Plaintiffs' negligence claim (Count VII) should be dismissed for failure to state a claim because the FINRA rules that Plaintiffs claim PFSI violated did not create any duties to Plaintiffs, and because Plaintiffs fail to plead that any act by PFSI proximately caused Plaintiffs' alleged losses.

**V.**    Plaintiffs' fraud claim (Count VIII) should be dismissed for failure to state a claim because Plaintiffs improperly seek relief for aiding and abetting fraud—a cause of action that does not exist in Texas.

**VI.** Plaintiff Dane Daniel's claims against PFSI should be dismissed in favor of arbitration because Plaintiff Daniel executed a valid arbitration agreement, enforceable by PFSI under state law principles, that delegates the question of arbitrability to the arbitrator.

## LEGAL STANDARDS

**Personal jurisdiction.**  Federal Rule of Civil Procedure 12(b)(2) requires dismissal when personal jurisdiction is lacking.  The plaintiff bears the burden of establishing a *prima facie* case supporting the exercise of personal jurisdiction.  *See Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

**Failure to state a claim.**  To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that, if accepted as true, state a plausible claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation omitted). Claims alleging fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

**Arbitration.** The Fifth Circuit has "accepted Rule 12(b)(3) as a proper method for seeking dismissal in favor of arbitration." *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n.5 (5th Cir. 2019). When a valid and enforceable arbitration agreement contains a clause delegating the question of arbitrability to the arbitrator, the court "***must*** refer the claim to arbitration absent some exceptional circumstance." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 203 (5th Cir. 2016) (emphasis added).

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction Over PFSI

Plaintiffs fail to plead that this Court has jurisdiction over PFSI—a corporation incorporated and headquartered in Georgia. Plaintiffs assert the Court has diversity jurisdiction over this action. ¶ 33. Accordingly, the Court must answer two questions in the affirmative before exercising personal jurisdiction over PFSI: (1) does the forum state's long-arm statute authorize jurisdiction, and (2) would asserting jurisdiction comport with federal due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*

Personal jurisdiction can be either general or specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). A court with general jurisdiction over a defendant may hear any claim against that defendant. *Id.* By contrast, for a court to exercise specific

jurisdiction, the action must "arise out of or relate to the defendant's contacts with the forum." *Id.* (citation modified). Here, Plaintiffs have failed to allege facts establishing either general or specific jurisdiction over PFSI.

### A.   PFSI is Not Subject to General Jurisdiction

Plaintiffs do not allege facts to support the exercise of general jurisdiction over PFSI. General jurisdiction over a corporate defendant exists only in a forum where the corporation is "at home." *Daimler*, 571 U.S. at 137 (citation omitted). A corporation is ordinarily "at home" only in its place of incorporation and its principal place of business. *Id.* Plaintiffs allege that PFSI is incorporated and headquartered in Georgia. ¶ 32. As such, the Court does not have general personal jurisdiction over PFSI because it is not "at home" in Texas.

### B.   PFSI is Not Subject to Specific Jurisdiction

Plaintiffs likewise fail to allege facts sufficient to establish specific personal jurisdiction over PFSI. The Fifth Circuit employs a three-prong test to determine whether the exercise of specific jurisdiction over a nonresident comports with due process: "(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

Plaintiffs meet none of the three prongs. The Complaint does not allege that PFSI "purposely availed" itself of the privileges of conducting any business in Texas. *See Luv N' care, Ltd.*, 438 F.3d at 469. In fact, Plaintiffs do not allege that PFSI did *anything* in Texas whatsoever let alone that any of Plaintiffs' causes of action arose from any Texas-related contacts PFSI may have had. Accordingly, Plaintiffs necessarily fail to allege that their causes of action arise from

8

PFSI's "forum-related contacts." *See id.*; *see also Bristol-Myers Squibb*, 582 U.S. at 265 ("What is needed is a connection between the forum and the specific claims at issue.").

Because Plaintiffs fail to allege any facts to satisfy the first two prongs of the due process analysis, the Court need not even reach the question of reasonableness. *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 500, 501 n.41 (5th Cir. 2012) (affirming dismissal and declining to reach "fair and reasonable" prong after finding plaintiff had not satisfied one of the first two prongs); *Baker Hughes Inc. v. Homa*, 2013 WL 5775636, at *19 (S.D. Tex. Oct. 25, 2013) (because plaintiffs failed to demonstrate minimum contacts, it was "unnecessary to address whether asserting jurisdiction in Texas is reasonable"). Nevertheless, it is plainly apparent that exercising jurisdiction over PFSI would not be "fair and reasonable." *See Luv N' care, Ltd.*, 438 F.3d at 469. Exercising jurisdiction is only fair and reasonable if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

That is not the case here. Jurisdiction must be based on a defendant's "*own* affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (emphasis added). At best, Plaintiffs only plead such random and attenuated connections. Plaintiffs allege that one former-PFSI broker resided in Texas, ¶¶ 27, and certain Champion-related entities were formed in Texas, ¶ 31. That these Texas-based third parties, who were not customers of PFSI, entered into transactions with Plaintiffs *without any involvement from PFSI*, and only after all Former PFSI Representatives had terminated their affiliation with PFSI, is far too attenuated to support jurisdiction over PFSI in Texas—including because Plaintiffs do not allege they *ever* transacted or communicated with PFSI.

9

Plaintiffs' failure to satisfy even one prong of the due process analysis would be sufficient to dismiss their claims against PFSI. *See ITL Int'l, Inc.*, 669 F.3d at 501 n.1. Their failure to satisfy *any* prong compels it.

## II.    The Complaint Fails to State a Claim Against PFSI

### A.    Plaintiffs Fail to State a Control Person Claim under Texas Gov't Code Ann. § 4008.055(a) (Counts II and V)[4]

Plaintiffs fail to plead that PFSI is a "control person" liable for the alleged sale of unregistered securities (Count II) or the distribution of allegedly misleading statements (Count V). To plead control person liability, Plaintiffs must allege (1) a primary violation of the TSA, and (2) PFSI controlled the primary violator. *Barnes v. SWS Fin. Servs., Inc.*, 97 S.W.3d 759, 764 (Tex. Ct. App. 2003); Texas Gov't Code Ann. § 4008.055(a).[5] To plead that PFSI controlled the alleged primary violators, Plaintiffs must plead that PFSI (1) exercised control over a primary violator in general, and (2) had the power to control the specific transaction upon which the primary violation is predicated. *Barnes*, 97 S.W.3d at 764. Plaintiffs must show this control existed "*at the time* of the alleged securities violations." *See In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *33 (S.D. Cal. Aug. 1, 2006) (emphasis added).[6]

Here, Plaintiffs claim that PFSI controlled the alleged primary violators, the Former PFSI Representatives (¶¶ 170, 197), but they utterly fail to meet their pleading burden. Plaintiffs allege that the Champion "scheme" was an *outside* business activity that, by definition, was unrelated to

---

[4] The Complaint refers to the TSA provisions under outdated Code provisions. This brief refers to the updated provisions under Tex. Gov't Code Ann. § 4008.055.

[5] Plaintiffs have not pled a primary violation of the TSA, including because the E-Commerce Stores and Digital Real Estate are not securities.

[6] Texas courts rely on federal securities law to define "control person" within the meaning of the Texas Securities Act. *In re Neighbors Legacy Holdings, Inc.*, 645 B.R. 864, 892, n.23 (Bankr. S.D. Tex. 2022) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 567 (S.D. Tex. 2002)).

the work the Former PFSI Representatives performed for PFSI. ¶¶ 84, 105; *see* FINRA Rule 3270. Plaintiffs also allege that their transactions with Champion occurred *after* the Former PFSI Representatives stopped working for PFSI. *Compare* ¶¶ 24–26 (earliest transaction June 2023), *with* ¶ 99 ("registration with PFS terminated in August 2022" and "March 2023"). There is thus no basis to infer that PFSI had the "power to control the specific transaction or activity upon which the primary violation is predicated," *Barnes*, 97 S.W.3d at 764, let alone "at the time of the alleged securities violations," *Petco*, 2006 WL 6829623, at *33.

*Barnes* is instructive. The court there held that the defendant broker-dealer was not liable as a control person when its registered representative sold securities through an outside underwriter, the broker-dealer did not receive a commission from the representative's transactions, the representative processed all correspondence to his customers through his own entity, and many plaintiffs "were unfamiliar with [defendant broker-dealer] and did not rely on [defendant broker-dealer] in deciding to purchase" the securities. 97 S.W.3d at 764–65. Just like in *Barnes*, Plaintiffs claim they bought securities from an entity unrelated to PFSI, and do not allege that PFSI received any commission from those purchases, that they relied on PFSI when deciding to enter their transactions, or that Plaintiffs were PFSI customers. ¶¶ 5, 38–43. Moreover, Plaintiffs' control person argument is even weaker here than in *Barnes*, since the Former PFSI Representatives were no longer registered with PFSI when they transacted with Plaintiffs. Plaintiffs' claims should be dismissed. *See also Meek v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 1996 WL 405436 at *3 (5th Cir. 1996) (brokerage firms were not control persons when they did not "ha[ve] anything to do with [the broker's] handling of the [plaintiffs'] securities investments, or any power to control his handling of those investments").

11

Plaintiffs' common law theories of vicarious liability also fail. ¶¶ 171, 198. These theories of liability only apply when the "agent consents to act on behalf of the principal, and the principal has the right throughout the duration of the relationship to control the agent's acts." Restatement (Third) of Agency § 1.01 cmt. C (A.L.I. 2006). The Complaint includes no such allegations. On the contrary, Plaintiffs allege that the Former PFSI Representatives' Champion scheme was an "outside business activity," unrelated to their work for PFSI. *See, e.g.*, ¶¶ 84, 105. By definition, the Former PFSI Representatives were not acting on behalf of PFSI in conducting these "outside business activities." *See Christiana Tr. v. Riddle*, 911 F.3d 799, 803 (5th Cir. 2018) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees ***in the scope of their authority or employment***." (emphasis added) (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)). Because the Former PFSI Representatives acted as agents of Champion when they allegedly violated the law, PFSI cannot be liable for those acts.[7] *See Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App. 2015) ("when an employee engages in conduct 'for the sole purpose' of furthering someone else's interests and not his employer's, the conduct is outside the employee's scope of employment").

### B.     Plaintiffs Fail to State an Aiding and Abetting Claim under Texas Gov't Code Ann. § 4008.055(c) (Counts III and VI)

Plaintiffs also fail to plead that PFSI aided and abetted any violation of the TSA. "To state a claim for aider and abettor liability under the TSA, a plaintiff must show (1) a primary violation of the securities laws, (2) that the aider and abettor has a general awareness of his role in the violation, (3) that he gave substantial assistance in the violation, and (4) that he intended to deceive

---

[7] *See, e.g.*, ¶¶ 5–7 (Representatives formed Champion, which was controlled by Fruge and offered and sold Digital Real Estate and E-Commerce); ¶ 31 (Individual Defendants "substantially operated their activities . . . through a web of interrelated companies" including Champion and not PFS); ¶¶ 39–40 (Fruge and others at Champion's Houston office developed materials to solicit customers).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008) (citation modified).  Plaintiffs must plead this claim with the particularity required under Rule 9(b).  *Id.* at 338–39 (5th Cir. 2008).  Plaintiffs meet none of the required elements.[8]

As an initial matter, Plaintiffs have not pled that PFSI had "general awareness" of its role in the alleged violations.  An aider and abettor must have "subjective awareness" of illegality, and "can only be held liable if it rendered assistance 'in the face of a perceived risk' that its assistance would facilitate untruthful or illegal activity by the primary violator." *Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005); *see also Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1128 (5th Cir. 1988) ("Aroused suspicions . . . do not constitute actual awareness of one's role in a fraudulent scheme.") *vacated on other grounds sub nom., Fryar v. Abell*, 492 U.S. 914 (1989).

Plaintiffs do not plead—let alone with particularity—that PFSI was aware of the alleged securities laws violations by the Former PFSI Representatives.  Plaintiffs do not plead that PFSI was aware that Champion was selling unregistered securities or that PFSI knew anything about the statements by the Former PFSI Representatives that Plaintiffs contend were misleading.  *See, e.g.*, ¶¶ 55–62, 67–71.  That is unsurprising because Plaintiffs insist that PFSI was not informed about the specifics of Champion's business.  ¶¶ 105, 212, 214.  Plaintiffs merely allege that PFSI was aware of the existence of Champion, but that says nothing about its actual awareness of Champion's alleged misconduct.  ¶¶ 73–81.  Because Plaintiffs do not plead with particularity that PFSI was aware of any illegality by the Former PFSI Representatives, their aiding and abetting claims should be dismissed.  *See Bagby v. Rydex Invs.*, 2007 WL 507042, at *3 (N.D. Tex. Feb. 16, 2007) (granting motion to dismiss as to defendants who, despite being "involved directly and

---

[8] Plaintiffs have failed to plead an underlying violation of the TSA.  *Supra* at 10.

13

indirectly" with wrongdoer's investment advice to plaintiffs, did not know that the investment advice was misleading).

Moreover, Plaintiffs have not pled that PFSI rendered "substantial assistance" to the Former PFSI Representatives in their alleged violations of the TSA. "Substantial assistance" requires that the alleged aider actually participate in the alleged violation. *Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465, 473 (Tex. App. 2001); *see also In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 182 (2d Cir. 2013) (substantial assistance of securities violation requires "that the defendant associated himself with a violation of the Act, participated in it as something that he wished to bring about, and sought by his actions to make the violation succeed.") (citation omitted). *Crescendo Investments, Inc.* is instructive. In that case, the court did not find substantial assistance where a franchisor merely "assist[ed] [the] franchisee" in its lawful business by allowing the franchisee to use the franchisor's reputation and celebrity status, and did not "assist [franchisee] in selling fraudulent securities or diverting money." *Crescendo Invs., Inc.*, 61 S.W.3d at 472–73. Plaintiffs allege even less here, contending that PFSI rendered substantial assistance by merely allowing the Former PFSI Representatives to run Champion while working for PFSI and by not reporting the reasons for the Former PFSI Representatives' departures on its Forms U-4 and U-5 filings with FINRA. ¶¶ 177, 203, 205. But Plaintiffs come nowhere close to pleading that PFSI provided assistance in *committing* the alleged violation, as required. *See Crescendo Invs., Inc.*, 61 S.W.3d at 473.

Finally, Plaintiffs do not come close to pleading that PFSI "intended to deceive [Plaintiffs] or acted with reckless disregard for the truth of [Champion and the Former PFSI Representatives'] misrepresentations." *See Dorsey*, 540 F.3d at 344 (citation omitted). All of Plaintiffs' allegations of scienter and "actual knowledge" are conclusory. ¶¶ 16, 119, 178, 204. It is unsurprising that

14

Plaintiffs cannot plead scienter: PFSI had no motive to deceive anybody about Champion because it had no interest (financial or otherwise) in this outside business activity. *See, e.g.*, *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103 (9th Cir. 2021) ("[I]f the complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter."). Plaintiffs' threadbare allegations are insufficient to plead scienter.

### C.      Plaintiffs Fail to State a Claim for Negligence (Count VII)

Plaintiffs fail to plead any element of their negligence claim. To state a claim, plaintiffs must plead (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) the breach proximately caused plaintiff's injury. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). As set forth below, Plaintiffs fail to plead that PFSI breached any cognizable duty it owed to the Plaintiffs, or that PFSI's actions were the proximate cause of Plaintiffs' injuries.

Plaintiffs' claim fails at the first step because PFSI did not owe any duties to Plaintiffs. The existence of a duty is a question of law. *New Texas Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 406 (Tex. 2008). Plaintiffs claim that PFSI owed three duties to the public at large: (1) a duty to determine whether the Former PFSI Representatives' work for Champion "posed a conflict of interest"; (2) a duty to determine whether Champion's offerings should have been characterized as private securities transactions under FINRA Rule 3280; and (3) a duty to provide "proper and accurate reporting of misconduct" and the "truth behind the PFS Representatives' termination." ¶¶ 211–13, 215.[9] Plaintiffs allege these duties arose under FINRA rules and PFSI's "own written supervisory policies." ¶¶ 212–215.

_____

[9] Plaintiffs also make cursory reference to "SEC, and State rules, regulations, and statutes requiring the proper and accurate reporting of misconduct" as purported sources for the alleged duties. ¶¶ 107, 215. That is not enough to plead a legally cognizable duty. *See Del Castillo v. PMI Holdings N. Am. Inc.*, 2016 WL 3745953, at *5 (S.D. Tex.

15

Plaintiffs are wrong. FINRA rules do not create duties to the public at large, and there is no private right of action for violations of those rules. *See e.g.*, *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) ("FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence"); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) (plaintiff could not "circumvent the lack of a private right of action [under FINRA rules] . . . by recasting her claim as a violation of a common law duty."); *Porter v. Shearson Lehman Bros. Inc.*, 802 F. Supp. 41, 63 (S.D. Tex. 1992) (no private right of action under rules of the National Association of Securities Dealers ("NASD"), FINRA's predecessor); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) ("It is well established that violation of an exchange rule [including NASD or FINRA rules] will not support a private claim"). Similarly, PFSI's internal "supervisory policies" do not establish a duty owed to Plaintiffs. *C.f. State Farm Bank, F.S.B. v. Manheim Auto. Fin. Servs., Inc.*, 2010 WL 3156008, at *2–4 (N.D. Tex. Aug. 6, 2010) (industry standards did not impose legal duties to "the public . . . at-large."); *Curry v. Pickett*, 2010 WL 3353952, at *8 (Tex. Ct. App. Aug. 26, 2010) (attorney disciplinary rules do not create a duty to third parties).

Even if Plaintiffs had alleged a legally cognizable duty, Plaintiffs fail to plead that PFSI's actions proximately caused Plaintiffs' losses. To plead proximate causation, Plaintiffs must establish both "foreseeability and cause in fact." *Sw. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002). "The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger his or her negligence creates." *Id*. "To establish cause in fact,"

---

July 13, 2016) ("Without a citation to a statutory provision, the Court is unable to determine whether the facts alleged state a violation of any statute"); *In re Oil Spill by the Oil Rig Deepwater Horizon*, 835 F. Supp. 2d 175, 182 (E.D. La. 2011), ("[T]he complaints fail to plead any specific statutes on which the negligence per se claims are based; therefore, those claims are dismissed.") *aff'd sub nom., In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014).

a plaintiff must show that a defendant's "negligence was a substantial factor in bringing about his injury and without which no harm would have been incurred." *Id*.

Plaintiffs plead neither. Plaintiffs allege they were harmed because Champion's successor did not honor "Champion's guarantees that it would 'buy back' investments from any and all investors" after it bought Champion's business in December 2024. ¶¶ 13, 20–21. It is difficult to understand why Plaintiffs think PFSI bears any responsibility for that action by Champion's successor. "[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014), and "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step" in the chain of causation, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010). Here, Plaintiffs' "theory of causation requires [the Court] to move well beyond the first step," *id.*, by attempting to hold PFSI liable for injuries allegedly caused by Champion and its successor, and the Court should reject it.

Plaintiffs also fail to plead foreseeability. Plaintiffs do not allege that PFSI knew anything about the money-back guarantee, let alone explain why PFSI should or even could have anticipated that Champion's successor would not honor that guarantee more than three years after PFSI approved Champion as an OBA. Even if the Court accepts Plaintiffs' claim that PFSI was somehow negligent during the time that the Former PSFI Representatives were affiliated with PFSI (it should not), there is no basis to infer that "a person of ordinary intelligence would have anticipated the danger" that ultimately came to pass years later after the Former PFSI Representatives were no longer affiliated with PFSI and Champion was sold off to another entity. *See Sw. Key Program,* 81 S.W.3d at 274.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### D.    Plaintiffs Fail to State a Claim for Fraud (Count VIII)

Finally, the Complaint fails to plead fraud.  Plaintiffs do not claim that PFSI itself committed fraud.  Instead, Plaintiffs allege that PFSI "materially aided" the fraud of the Former PFSI Representatives.  ¶¶ 225–27.  That claim fails because Texas does not recognize aiding and abetting fraud as a standalone cause of action.  *See Hampton v. Equity Tr. Co.*, 607 S.W.3d 1, 5 (Tex. Ct. App. 2020) ("In the absence of recognition by the Supreme Court of Texas or the Legislature, we conclude that a common-law cause of action for aiding and abetting does not exist in Texas."); *Solis v. S.V.Z.*, 566 S.W.3d 82, 102–03 (Tex. Ct. App. 2018) (same); *Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*, 2016 WL 5844707, at *13 (S.D. Tex. Oct. 6, 2016) ("Texas has not recognized an independent 'aiding and abetting' fraud claim independent from a conspiracy claim.").  As a result, Plaintiffs have not stated a claim under Count VIII against PFSI.

### III.    Plaintiff Daniel's Claims Must Be Dismissed in Favor of Arbitration

Plaintiff Dane Daniel's claims against PFSI must be dismissed on the independent basis that the claims belong in arbitration.  Daniel's agreement with Champion contains an arbitration provision and class action waiver.  *See* Ex. B §§ 10.4(B), 10.5.[10]  The Federal Arbitration Act, 9 U.S.C. § 1 et seq., provides that agreements to arbitrate are valid and enforceable.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  Moreover, the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'"  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  Typically, courts considering whether to dismiss a case in favor of arbitration must decide (1) whether there is an enforceable agreement to arbitrate between the parties, and (2) whether the dispute in question falls within the scope of the arbitration

---

[10] In ruling on a motion to compel arbitration, the court may consider evidence outside the pleadings, such as an agreement containing an arbitration provision. *CMA CGM, S.A. v. GCC Supply & Trading LLC*, 793 F. Supp. 3d 866, 875 (S.D. Tex. 2025) (citing *Gezu v. Charter Communications*, 17 F.4th 547, 552–54 (5th Cir. 2021)).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

agreement. *See Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 302 (5th Cir. 2021). "But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). In that case, the Court considers only "(1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause." *Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 378 (5th Cir. 2016); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) (parties can "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as . . . whether their agreement covers a particular controversy"). Courts grant motions to compel arbitration in "almost all cases" in which there is a delegation clause. *Reyna*, 839 F.3d at 378.

As set forth below, Plaintiff Daniel is party to a valid arbitration agreement that delegates the question of arbitrability to the arbitrator. *See* Ex. B. As a result, his claim must be dismissed in favor of arbitration.[11]

### A.    Daniel is Party to a Valid and Enforceable Arbitration Agreement

"A party seeking to compel arbitration must first show that a valid arbitration agreement exists between the parties, a determination governed by traditional state contract principles." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). The validity and enforceability of an arbitration agreement is decided under the law in the agreement's choice of law provision. *Overstreet v. Contigroup Companies, Inc.*, 462 F.3d 409, 411 (5th Cir. 2006). Daniel's E-commerce Store Agreement provides that Arizona law governs

---

[11] Moreover, to the extent any member of the purported class is a representative or customer of Primerica or its affiliates, that member is contractually obligated to pursue their claims through binding arbitration.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

all disputes "arising out of or relating in any way to th[e] agreement." Ex. B §§ 10.4(B), 10.7. Under Arizona law, "the validity and enforceability of an arbitration agreement is determined by contract law principles." *Cook v. Russell in & for Cnty. of Maricopa*, 258 Ariz. 265, 268 (Ct. App. 2024). A contract is formed where there is "an offer, an acceptance, consideration and sufficient specification of terms so that the parties' obligations can be determined." *Flory v. Silvercrest Indus., Inc.*, 129 Ariz. 574, 581 (1981). Here, there can be no dispute that Daniel was offered an opportunity to purchase an E-Commerce Store; that Daniel accepted the offer with his signature; that there was an exchange of promises, including that Daniel would submit all disputes to arbitration; and that the terms of the agreement are specific. *See* Ex. B. In particular, Daniel agreed that "ANY DISPUTE, CLAIM, OR CONTROVERSY ARISING OUT OF OR RELATING IN ANY WAY TO TH[E] AGREEMENT OR THE SERVICES SHALL BE RESOLVED THROUGH A DISPUTE RESOLUTION APPROACH . . . . IF THE DISPUTE IS UNABLE TO BE SETTLED AT MEDIATION, THE PARTIES SHALL SUBMIT THE DISPUTE TO ARBITRATION."[12] *Id.* §§ 10.4, 10.4(B). Accordingly, Daniel entered into a valid arbitration agreement.

Although PFSI is not party to the E-Commerce Store Agreement, it can enforce it under Arizona law. A nonsignatory can enforce an arbitration clause against a signatory "[w]hen each of [the] signatory's claims against [the] nonsignatory makes reference to or presumes the existence of the written agreement." *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 231 Ariz. 287, 297 (Ct. App. 2012) (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)); *see also Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1070 (9th Cir. 2020)

---

[12] Daniel further agreed that "any dispute resolution proceedings pursuant to this Agreement will be conducted only on an individual basis and not in a class, consolidated or representative action." Ex. B § 10.5.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

(nonsignatory could enforce arbitration agreement where plaintiff's claims "presume[d] and 'intimately rel[ied]' on the existence of" the agreement containing arbitration clause); *Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, 772 F. App'x 585, 586 (9th Cir. 2019) (nonsignatory could enforce arbitration agreement where plaintiff's claims were intertwined with the agreement containing arbitration provision).

Here, all of Daniel's claims against PFSI are founded on his E-Commerce Store Agreement. He claims that the E-Commerce Store that was the subject of the agreement was an unregistered security; that he was misled and defrauded in purchasing the E-Commerce Store; and that PFSI should be held liable for losses suffered as a result of both alleged violations. Moreover, many of the Complaint's allegations explicitly reference or quote from the Agreement, ¶¶ 24, 63,[13] 65, 72, which confirms that the claims "presume and intimately rely on the existence of" the E-Commerce Store Agreement, *Shivkov*, 974 F.3d at 1070–71 (holding nonsignatory could enforce arbitration agreement). As a result, Daniel is estopped from arguing that PFSI cannot enforce the E-Commerce Store Agreement's arbitration provision against him.

**B.      Daniel's Agreement Contains a Valid Delegation Clause, Limiting the Court's Analysis.**

As noted above, where an arbitration agreement contains a delegation clause, the arbitrator, and not the Court, must decide whether a plaintiff's claims belong in arbitration. An arbitration agreement contains a delegation clause if it incorporates the American Arbitration Association (AAA) rules. *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (incorporation of AAA rules "presents clear and unmistakable evidence that the parties

---

[13] The Complaint includes two paragraphs numbered 63. The reference here is to the second paragraph labeled 63 on page 14.

agreed to arbitrate arbitrability"); *see also Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262–63 (5th Cir. 2014) (same).

Here, Daniel's E-Commerce Store Agreement incorporates the AAA rules into the agreement. *See* Ex. B § 10.4(B). Accordingly, arbitrability of Daniel's claims is a question for the arbitrator, and his claims must be dismissed under Federal Rule of Civil Procedure 12(b)(3).

## CONCLUSION

For the foregoing reasons, PFSI respectfully requests that the Court dismiss (1) Plaintiffs' claims against it for lack of personal jurisdiction and/or failure to state a claim upon which relief can be granted, and (2) dismiss Daniel's claims in favor of arbitration.

Dated: December 19, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Brian M. Lutz*
BRIAN M. LUTZ (*Pro Hac Vice*)
MICHAEL J. KAHN (*Pro Hac Vice*)
One Embarcadero Center #2600
San Francisco, CA 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
BLutz@gibsondunn.com
MJKahn@gibsondunn.com

COLLIN J. COX (Attorney-In-Charge)
Texas Bar No. 24031977
SDTX Federal No. 654469
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: (346) 718-6600
Facsimile: (346) 718-6620
CCox@gibsondunn.com

*Attorneys for Defendant PFS Investments, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to Civ. L.R. 5.3, I hereby certify that on December 19, 2025, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brian M. Lutz*
Brian M. Lutz

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS